OPINION OF THE COURT
Faviola A. Soto, J.
Plaintiff instituted this action in Supreme Court by summons and complaint dated October 22, 1996. Plaintiff sought the return of certain photographs he had taken of the noted artist Willem de Kooning, compensatory damages in the amount of $50,000 for defendants’ breach of an oral agreement concerning the consignment of the photographs to defendants from September 12, 1996 until October 19, 1996, and punitive damages in the amount of $250,000.
*349 In their amended verified answer, defendants denied they breached the agreement and denied they wrongfully held the photographs. In addition to asserting various affirmative defenses, the defendants also asserted four counterclaims. In the first counterclaim, defendants asserted that it was plaintiff who breached the oral contract, in that plaintiff agreed that defendants had the exclusive right to sell the photographs for a one-year period following the conclusion of the exhibition. Defendants sought $375,000 in compensatory damages, and punitive damages in the amount of $250,000. In the second counterclaim, defendants sought compensatory damages in the amount of $38,000 and punitive damages in the amount of $250,000 for alleged fraud and misrepresentation, in that plaintiff represented to defendants that he would sign the contract and would tender a signed contract, and defendants justifiably relied on plaintiff’s representation and exhibited and promoted plaintiff’s photographs. The third counterclaim, in unjust enrichment, sought damages in the amount of $38,000, and, in the fourth counterclaim, defendants sought declaratory relief that defendants lawfully retained the photographs as collateral until plaintiff compensated them for their costs and disbursements incurred in the exhibition and promotion of plaintiff’s photographs.
In his verified reply, plaintiff denied the allegations, and sought dismissal of the counterclaims. Discovery and motion practice ensued. Plaintiff sought summary judgment on his complaint in replevin, breach of contract and conversion, and dismissal of defendants’ counterclaims; plaintiff also sought sanctions. Defendants opposed the motion and cross-moved for summary judgment dismissing plaintiff’s conversion claim.
By decision and order dated July 6, 1998, Justice Lorraine S. Miller granted summary judgment in plaintiff’s favor on plaintiff’s action in replevin and dismissed defendants’ counterclaim for a declaratory judgment in their favor. The court found that under section 12.01 of the Arts and Cultural Affairs Law, “an artist’s works held by an art merchant in a consignor/consignee relationship are considered trust property and cannot be subject to any claims, liens or security interests of any kind or nature whatsoever.” The defendants were ordered to return the 16 photographs to plaintiff or his attorney within 20 days of service of a copy of the order with notice of entry.
The court denied summary judgment to both sides on their breach of contract actions, and denied defendants’ motion to *350 dismiss the conversion claim. The court also dismissed defendants’ counterclaims for fraud and misrepresentation, and for unjust enrichment, and denied that portion of plaintiffs motion seeking sanctions.
Defendants returned the 16 photographs, as well as one transparency and one original previously damaged photograph. Plaintiff subsequently brought a second motion for summary judgment, and for contempt and sanctions, arguing that defendants failed to return another photograph, and thereby failed to comply with the court’s decision. Justice Miller denied the motion. She found that plaintiff sought to “enlarge the number to include some other photo which was not encompassed” in the order. Justice Miller also transferred the matter to Civil Court pursuant to CPLR 325 (d).
The Trial
A trial of the remaining claims was held before this court in September and October 1999. Both sides sought compensatory damages for breach of agreement. Plaintiff also sought punitive damages, and attorneys’ fees. Defendants sought to dismiss plaintiffs claims as he named the wrong party corporate defendant, and failed to amend; plaintiff sought to hold the individual defendants personally liable. Before the court are plaintiffs posttrial memorandum dated November 8, 1999, defendants’ posttrial memorandum dated November 22, 1999, and plaintiffs posttrial reply memorandum dated December 9, 1999.
The court makes the following findings of fact and conclusions of law.
Plaintiff is a photographer who took numerous exclusive photographs of the noted artist Willem de Kooning during the period 1966 through 1980. Defendant Kristine Woodward is the secretary and treasurer and defendant John Woodward is the president of G.O.L.A. Inc.; G.O.L.A. Inc. is a corporation organized under the laws of the State of New York and was incorporated on April 3, 1995. G.O.L.A. Inc. operated a gallery at 476 Broome Street, New York, New York, under the name of Gallery of Living Artists. In approximately September 1996, the gallery started to use the name Woodward Gallery.
In approximately April of 1996, plaintiff came to the gallery, introduced himself to John Woodward, and informed Mr. Woodward of the exclusive photographs he had taken of Willem de Kooning. Mr. Koeniges appeared at the gallery approximately two weeks later, and showed Mr. Woodward 36 photographs. They discussed the possibility of the gallery *351 exhibiting the photographs and selling them. I credit the testimony of Mr. Woodward, and find that at this meeting plaintiff gave Mr. Woodward as a gift an 11-inch by 14-inch Cibachrome print taken at Little Albert’s Beach.
A third meeting took place with Mr. and Ms. Woodward, Mr. Koeniges, William Myers, a nonpracticing attorney who specializes in art, Kevin Kish, an associate of the gallery, and Lisa Carlson, an assistant curator at the Whitney Museum. At this meeting, the photographs were reviewed, and discussions were held concerning the nature of an exhibition of these photographs at the gallery. In the next two weeks, Mr. Woodward researched the value of the photographs.
Plaintiff and the defendants agreed that the photographs would be sold as a limited edition consisting of 10 sets of photographs with 16 photographs in each set for a total of 160 photographs. The first edition of the photographs would be embossed with the names of the gallery and Mr. Koeniges, dated 1996, signed by Mr. Koeniges, and numbered.
A number of meetings and a telephone call followed. Discussions were held as to the price of the photographs. At the last meeting, the parties agreed that the gallery-would sell the photographs for between $6,000 and $7,500 to the general public and $5,000 to professional organizations such as museums. A complete set consisting of 16 photographs would sell for $75,000. Additionally, it was agreed that the gallery could discount the sales price by 10% without plaintiff’s approval, but that discounts greater than 10% had to be approved by plaintiff. The parties also agreed that the gallery would receive 50% and plaintiff would receive 50% of the sales price of a photograph.
The parties agreed that the gallery would promote, market, and exhibit 16 photographs during the period of September 12, 1996 and October 19, 1996. Mr. Koeniges and Mr. Woodward selected the 16 photographs that would be exhibited at the gallery and comprise the first public exhibition of plaintiff’s photographs (the photographs or the de Kooning photographs). Plaintiff expended approximately $200 in production costs for each of these photographs.
A few days later, they went to a framer and selected the frames. The photographs were left with the framer. The defendants paid $1,800 for the framing. These framed photographs were embossed with the names of the gallery and Mr. Koeniges and the year 1996. Plaintiff maintained possession of the transparencies of the photographs.
*352 Approximately 2,500 invitations were sent out for the opening. Defendants, to promote the exhibit, also expended monies on advertisements and on creating and marketing referencing packages. Defendants invested time and energy into preparing the exhibition, and marketing and promoting the photographs; defendants also canceled the exhibition of another artist for this exhibition. Defendants similarly expended monies for creating and hosting the opening night. Defendants’ disbursements amounted to approximately $17,200.
Plaintiff visited the gallery on or about September 11, 1996, one day before the opening, to review and approve the exhibition. One photograph that was wrinkled slightly was replaced with an unwrinkled photograph.
On September 12, 1996, the exhibition of the de Kooning photographs opened at the gallery. Four hundred people attended, security officers and staff were hired, and wine, champagne and appetizers were served.
Plaintiff was pleased with the exhibition. Yet, at no time prior to, during, or subsequent to the exhibition, did plaintiff sign the proposed contract drafted by the defendants, or the proposed revised contract. This proposed contract contained, in addition to terms relating to the exhibition, a clause giving defendants an exclusive one-year period commencing at the end of the exhibition to sell plaintiffs photographs.
On October 9, 1996, plaintiff telephoned Mr. Woodward. No sales of the photographs had yet occurred. Mr. Koeniges expressed in colorful terms his characterization of the unsigned contract. On October 12, 1996, plaintiff appeared at the gallery and asked for Mr. Woodward. In Mr. Woodward’s absence, Ms. Woodward took out a copy of the proposed contract, which defendants had revised to address plaintiff’s concerns with respect to the gallery’s commissions from publication rights and down payments during the one-year exclusive. Plaintiff refused to sign the contract.
Ms. Woodward told him she had nothing more to discuss with him and that he should leave; the plaintiff threatened to remove the de Kooning photographs from the walls of the gallery and threatened to call the police; Ms. Woodward told him she would call the police, and she did, advising them a burglary was in progress. Two uniformed police officers responded, escortéd plaintiff out of the gallery, and advised plaintiff that his dispute with the defendants was civil in nature and should be resolved in court.
*353 By letter dated October 15, 1996, plaintiffs counsel demanded the immediate return of the photographs. Defendants did not do so. This action was instituted a few days later.
The Contract Claims
There does not appear to be a serious dispute between the parties that they agreed that the defendants were to exhibit the 16 selected de Kooning photographs, although each side argues that the other breached the exhibition agreement. What is in dispute is whether this agreement covered only the exhibition period between September 12, 1996 through October 19, 1996, or also granted a one-year exclusive period following the exhibition. Plaintiff argues that the agreement was for the exhibition period only, and that enforcement of any alleged oral agreement for the one-year period following the exhibition is barred by the Statute of Frauds. The defendants urge this court to find that plaintiff agreed to the one-year exclusive, in that it would be illogical for defendants to agree to incur the costs of exhibiting and promoting the de Kooning photographs absent the exclusive period, which would enable defendants to recoup their costs and make a profit. Defendants also argue that part performance of the agreement takes the agreement out of the Statute of Frauds.
The court finds that the parties reached agreement only as to the exhibition period. There was no meeting of the minds as to the one-year exclusive period. While the court credits Mr. Woodward’s testimony that plaintiff told him he would sign the contract, the recitation by one party that they would sign a contract is merely a statement of intent, and does not create a binding, enforceable contract. Defendants chose to go forward with the exhibition without a signed contract providing for the exhibition and the one-year exclusive. Perhaps defendants proceeded without a contract providing for the one-year exclusive because they then were caught in the momentum and excited by the prospect of the exhibition; perhaps they then believed they would sell a sufficient number of photographs during the exhibition to recoup their costs or that plaintiff would be persuaded and agree to the one-year exclusive. That their hopes did not bear fruit, however, does not result in a finding that the parties agreed to a one-year exclusive period.
Moreover, even assuming the parties agreed to the exclusive, the court cannot enforce it due to the Statute of Frauds. The alleged oral agreement, by its terms, could not be fully *354 performed within one year, as it provided for the one-year exclusive to follow the five-week exhibition period. Nor does the argument of part performance succeed here, as the alleged partial performance — the exhibition — was not “unequivocally referable” to the alleged agreement for the one-year exclusive.
As to the parties’ claims that the other breached the exhibition agreement, the court finds that neither plaintiff nor the defendants have shown that a breach occurred or that they suffered compensatory damages as a result of the breach.
Plaintiff has failed to show that defendants breached the oral agreement. As agreed, defendants exhibited and promoted plaintiff’s photographs. The agreement did not provide a guarantee that the photographs would be sold. Nor was there an express “best efforts” clause to the agreement. Even assuming a “best efforts” clause could be implied, and the court does not make such a finding, plaintiff has failed to show that defendants did not use their best efforts.
Plaintiff also appears to be arguing that defendants breached the agreement by their failure to return the photographs, and that he suffered compensatory damages therefrom. First, the parties did not expressly agree to a date by which the photographs were to be returned. Accordingly, the court will supply the missing provision, which the court finds to be a reasonable period of time. Plaintiff has not shown that defendants breached the agreement by failing to return the photographs within a reasonable period of time following the last day of the exhibition, Saturday, October 19, 1996. Indeed, only one full business day elapsed before plaintiff instituted the action on Tuesday, October 22, 1996. Plaintiff also has not shown that the defendants breached the agreement by not permitting him to remove immediately the photographs on October 12th and 15th.
Moreover, even assuming that plaintiff has shown that defendants breached the agreement by not permitting him to remove the photographs at his demand while the agreement was still in effect or within a few days thereafter, plaintiff has not shown that he suffered any damages by reason of defendants’ breach. He has not argued, much less shown, that he had a buyer for one or all of the photographs, and that the sale would have taken place but for the gallery’s failure to immediately return the photographs.
Accordingly, plaintiff’s cause of action for damages due to breach of agreement is dismissed.
Defendants similarly cannot succeed on their claim for damages for plaintiff’s breach of agreement. The agreement *355 provided that defendants would incur their costs for the exhibition. To the extent that plaintiff repudiated the agreement by appearing at the gallery and demanding that defendants immediately remove the photographs and return them to him, defendants have not shown that a sale did not occur because of plaintiffs appearance at the gallery and the repudiation.
The Conversion Claim
Plaintiff also seeks compensatory and punitive damages on his conversion claim. The factual basis for plaintiffs theory for recovery on his conversion claim rests on: defendants’ failure to permit him to remove the photographs; defendant Ms. Woodward’s statement to and involvement with the police, which plaintiff argues amounts to an expression and exercise of ownership; defendants’ failure to comply with the letter from plaintiffs counsel demanding that they return the photographs; and defendants’ failure to return the photographs during the pendency of the action until Justice Miller ruled on their respective claims respecting the photographs. There is no need for the court to opine on whether plaintiff has shown that these facts sufficiently comprise the elements for the tort of conversion, however, as plaintiff has failed to show that he suffered any compensatory damages.
Nor has plaintiff shown that he is entitled to punitive damages under these circumstances. Plaintiff has not shown, and the court does not find, that defendants engaged in malicious or reckless conduct, or that defendants engaged in a pattern of behavior that was aimed at the public in general or that rendered the act committed against plaintiff a public wrong.
Plaintiff argues that this court must award punitive damages on his conversion claim because Justice Miller granted him summary judgment on his replevin claim and dismissed defendants’ counterclaim for a declaratory judgment that they could retain the photographs, having found that Arts and Cultural Affairs Law § 12.01 governed. Plaintiff appears to be arguing that by violating the statute, defendants per se exhibited sufficiently morally culpable conduct for the imposition of punitive damages.
Notably, however, Justice Miller denied summary judgment to both sides on the conversion claim, and referred the conversion and breach of agreement claims to Civil Court for trial. This court, having fully weighed the facts at trial and judged defendants’ demeanor and credibility, expressly finds that defendants’ actions do not merit the imposition of punitive *356 damages. Similarly, that defendants returned the photographs only after the court found in plaintiffs favor on his replevin claim, plaintiff having moved for summary judgment after approximately one year of pretrial practice and discovery, does not merit the award of punitive damages.
Plaintiff also seeks the return of the 11-inch by 14-inch Cibachrome print. The court finds that this photograph was given by plaintiff to Mr. Woodward as a gift, and the court dismisses this claim.
Punitive Damages, Attorneys’ Fees and the Violation of Arts and Cultural Affairs Law
Plaintiff argues that he is entitled to an award of attorneys’ fees and punitive damages. Plaintiff has failed to show that he is entitled to such an award. Neither statute nor the parties’ agreement provides for the recovery of attorneys’ fees, and, accordingly, each side bears the cost of their attorneys’ fees. Similarly, the court does not find that punitive damages are appropriate here, pursuant to statute or otherwise.
Plaintiff argues that punitive damages and attorneys’ fees must be awarded because defendants violated Arts and Cultural Affairs Law § 12.01. In relevant part, that statute provides that notwithstanding any custom or agreement to the contrary, whenever
“an artist * * * delivers * * * a work of fine art, craft or a print of his own creation to an art merchant for the purpose of exhibition and/or sale on a commission, fee or other basis of compensation, the delivery to and acceptance thereof by the art merchant establishes a consignor/consignee relationship as between such artist or craftsperson and such art merchant with respect to the said work, and * * *
“(ii) such work is trust property in the hands of the consignee for the benefit of the consignor * * * [and]
“(v) no such trust property or trust funds shall be subject or subordinate to any claims, liens or security interest of any kind or nature whatsoever.” (Arts and Cultural Affairs Law § 12.01 [1] [a].)
Even in the absence of Justice Miller’s order, the applicability of the statute is clear. Defendants qualify as “art merchant(s),” Mr. Koeniges as an “artist,” and the de Kooning photographs as “fine art” (which includes the term “print” as also defined in the statute). (Arts and Cultural Affairs Law § 11.01.) That the section is applicable, however, does not result *357 in a finding that punitive damages or attorneys’ fees must be awarded.
Notably, plaintiff cannot point to any provision of the statute that entitles him to an award of punitive damages or attorneys’ fees. This absence of statutory authority is in clear contrast to other articles covered by the Arts and Cultural Affairs Law, and also in contrast to other statutes where the Legislature, by specific provisions or other expressions of intent, authorizes or mandates the award.
By enacting section 12.01, and the related section 12.03 also cited by plaintiff, the Legislature intended to, and did, provide legislation to govern the artist-art merchant relationship in a consignment, protect the artist’s work and proceeds from a sale from an art merchant’s lien or the claims of a third party, and protect fine art from seizure or attachment while on exhibit at a museum or other nonprofit art gallery. The Legislature did not intend to, and did not, provide for the recovery of attorneys’ fees, or authorize the imposition of punitive damages, treble damages, or a civil fine or criminal sanction, for a violation of section 12.01 or 12.03.
Contrary to plaintiff’s argument, the Court of Appeals opinion in Matter of Grand Jury Subpoena Duces Tecum (Museum of Modern Art) (93 NY2d 729) does not indicate otherwise. There, the Court held that the protection of section 12.03 against “any kind of seizure” applies to a criminal action as well. Accordingly, the Court granted the Museum of Modern Art’s motion to quash the subpoena duces tecum requiring the production of two Egon Schiele paintings on loan to the Museum from the Leopold Foundation in Vienna, issued by the New York County District Attorney’s Office in connection with the Grand Jury investigation into the theft of those paintings during the Nazi annexation of Austria. While noting the significance of the statute and its intended role in promoting and ensuring the lending of art to museums for the cultural welfare of the people and the State’s institutions, the Court did not address, much less find, that the section mandated or even authorized the imposition of punitive damages or an award of attorneys’ fees.
Nor can an argument be made that the Legislature merely overlooked but intended to provide for these remedies. Not only is there an absence of language in the statute or legislative history indicating such an intent, the Legislature specifically provided in other articles of the Arts and Cultural Affairs Law for the remedies of attorneys’ fees and other relief. Thus, *358 section 15.15 provides for the recovery of reasonable attorneys’ fees to the prevailing party for a violation of article 15, which governs full disclosure in the sale of visual art objects. Section 15.17 authorizes the Attorney General to bring an injunctive action pursuant to specified provisions of the General Business Law or the Executive Law for violations of article 15 or sections 14.05, 14.06 or 14.07 (protecting the authorship rights of artists), and to recover not only restitution but also a civil penalty. The absence of authority for granting attorneys’ fees and additional remedies was one of commission, not omission, and the court may not substitute its judgment for that of the Legislature.
Plaintiff similarly argues that punitive damages or attorneys’ fees should be awarded because the statute describes the property as “trust property.” The use of this term, without more, is insufficient. Nor does the mere existence of civil legislation convert a private act done in contravention of that statute into a public wrong authorizing an award of punitive damages where plaintiff has not proved that punitive damages otherwise are indicated.
Indeed, the language in Arts and Cultural Affairs Law § 12.01 differs from that found in other legislation where courts have found that punitive damages may be recovered. For example, Lien Law article 3-A provides that a diversion of trust funds constitutes a larceny punishable under the Penal Law, thereby “ ‘satisfy[ing] the high threshold of moral culpability necessary to support a punitive damages award’ [citations omitted].” (Pinnacle Envtl. Sys. v Granger & Sons, 245 AD2d 773, 775 [3d Dept 1997].) Additionally, the Legislature granted broad discretionary power to the court by authorizing the court to award “ ‘[s]uch other relief as to the court may seem necessary and proper’.” (Sabol & Rice v Poughkeepsie Galleria Co., 147 Misc 2d 641, 644 [1990], affd 175 AD2d 555 [3d Dept 1991].)
While the court has denied plaintiff’s claims for attorneys’ fees and punitive damages, the court is sympathetic to plaintiffs argument that a violation of section 12.01 occurred, and the return of the photographs after institution of a lawsuit and almost two years later does not fully remedy the wrong. While not necessarily implicated here, there appears to be a gap in the protections afforded to artists under section 12.01. Perhaps, should the Legislature choose to amend the Arts and Cultural Affairs Law, the Legislature may deem it appropriate to address this issue.
*359 In light of the court’s finding, there is no need for the court to address plaintiffs claims that the defendants are personally liable and defendants’ claims that plaintiff sued the wrong party. Additionally, to the extent not specifically addressed, the court has examined the remaining arguments of plaintiff and defendants and finds them unavailing.
The Clerk is directed to enter judgment dismissing plaintiff’s remaining causes of action against the defendants and dismissing defendants’ remaining counterclaims against plaintiff.